FILED

2017 Mar-29  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

JAMES DONALD NYE,        )
                              )
         Plaintiff       )
                              )
     vs.                 )     Case No.  4:16-cv-00806-AKK-HGD
                              )
TIM RILEY, et al.,         )
                              )
        Defendants    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. (Doc. 1). The plaintiff names the following defendants in the complaint: Tim Riley, Markita Shaw, Ramona Rodgers and Suzie McCoy. (*Id.* at 3). The plaintiff seeks monetary and injunctive relief. (*Id.* at 11). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

# I. Standard of Review

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees.  The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or which does not state a claim upon which relief can be granted.  *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(I), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist.  *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted.  A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones v. Bock*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. Factual Allegations

On May 6, 2015, United States District Judge R. David Proctor revoked the plaintiff's supervised release and sentenced him to 21 months in the custody of the Bureau of Prisons. (Doc. 1 at 16) (*United States v. James Donald Nye*, Case No.

5:08-cr-394-JEO-1, doc. 47 (N.D. Ala. May 6, 2015)).  "Restitution in the amount of $257,123.99 [was] reimposed."  (*Id.*).

On November 9, 2015, the plaintiff pled guilty to Identity Theft and Theft by Deception in the First Degree in the Circuit Court of Marshall County, Alabama.  (*Id.* at 12) (*State of Alabama v. James Donald Nye, II*, Case No. CC-15-203).  Judge Tim Riley sentenced the plaintiff to concurrent 10-year sentences, split to serve two years in the custody of Alabama Department of Corrections or the Marshall County Community Corrections Work Release Center.  (*Id.* at 13).  The plaintiff was given one day jail credit and ordered to pay $32,000 in restitution.  (*Id.* at 12).

Thereafter, the plaintiff was transported to Blount County, Alabama, and on November 10, 2015, he pled guilty to Theft of Property First Degree.  (*Id.* at 13-14) (*State of Alabama v. James Nye,* Case No. CC-15-033).  Judge Steven King sentenced the plaintiff to 11 years, split to serve one year in "Community Corrections beginning on 11-14-14."  (*Id.* at 14-15).  Judge King also ordered the sentence to run concurrently with "all case [illegible] state & federal jurisdiction."  (*Id.* at 14).

The plaintiff alleges Judge King directed the sheriff's department to turn him over to the Bureau of Prisons once he served four days in the Blount County Jail.  (*Id.* at 5).  However, the sheriff's department took the plaintiff directly from Judge King's court back to the Marshall County Jail.  (*Id.*).  The plaintiff contacted counsel, who

informed him that he was "not supposed to be in Marshall County at all, because the sentence imposed in Blount County overrides the sentence imposed in Marshall County." (*Id.*).

The plaintiff spoke with Mrs. Ramona Rodgers, the Assistant Director of the Marshall County Work Release Center, about this problem. (*Id.*). During the meeting, Rodgers gave the plaintiff a legal letter from his Blount County attorney dated November 30, 2015. (*Id.*). A copy of the letter was on Rodgers' desk. (*Id.*). When the plaintiff asked why his mail had been opened, Mrs. Rodgers replied that "all mail was opened." (*Id.*). The envelope containing his attorney's letter also contained a copy of Judge King's order. (*Id.*). The plaintiff gave Rodgers a copy of all of his federal and state sentences and tried to explain to her that it was a mistake for him to be at "Work Release, because he should be in Blount County serving his four days as Judge King ordered." (*Id.*). Rodgers asked why she should honor another judge's order, and informed the plaintiff "he was stuck at Marshall County and he had two choices: either get a job or he would be placed back in the County Jail." (*Id.*).

On November 26, 2015, the plaintiff received a receipt that stated he owed a total of $42,859.31 as a result of his Marshall County convictions. (*Id.* at 7). The plaintiff complains he has been overcharged because Judge Riley only ordered him

"to pay $20,000 to Citizens' Bank and $12,000 to Vantage Bank, along with court costs of $968.70." (*Id.*).

On December 14, 2015, the plaintiff obtained employment "as a maintenance tech." (*Id.*). In accordance with standard procedure, the work release center drug tested him every week, but "on several occasions, he was charged for more than one test per week." (*Id.*). The plaintiff also was subjected to a $25 per week smoking charge for four months even though he is not a smoker. (*Id.*). He asked "Work Release authorities about the overcharges," but never received a response. (*Id.*).

On February 27, 2016, the plaintiff inhaled "Peracetic Acid" at the plant where he worked and spent 10 days in the hospital recovering from "chemical pneumonia." (*Id.*). The plaintiff asserts he still has lasting complications from the injury. (*Id.*). On March 7, 2016, the plaintiff returned to work release and was taken to his employer "to fill out paperwork about the incident." (*Id.*). The employer told the plaintiff the matter "would be turned over to their Workman's Comp. Carrier." (*Id.*).

The plaintiff had "several doctors' appointments with specialists about his illness, along with several very expensive prescriptions that needed to be filled." (*Id.*). Mrs. Markita Shaw, the Work Release Director, refused to fill his prescriptions and instructed him to "use his Blue Cross Insurance to get his medications filled." (*Id.*). The plaintiff attempted to follow her orders after being transported to a drug

store, but the pharmacy manager advised him Blue Cross would not pay for the drugs because "it was a Workman's Comp claim." (*Id.*). The manager stated that if the plaintiff tried to use "Blue Cross, the insurance company may cancel his insurance." (*Id.*).

The plaintiff explained this predicament to Mrs. Shaw and declared his employer, through their Workman's Compensation carrier, was responsible for paying for the medications he needed, but Shaw again refused "to turn his prescriptions in to his employer" (*id.* at 9) and "told him to go to his rack and lay down" (*id.* at 7). The plaintiff "had to go to the ER several times because of his illness, and also because he was refused his meds. He was getting sicker instead of better." (*Id.*).

On March 12, 2016, the plaintiff "asked to speak to Mrs. Suzie McCoy to fill out his paperwork for his *Forma Pauperis.*" (*Id.*). McCoy refused to do so and threw the forms in the trash can. (*Id.*). The plaintiff explained the forms were "for the federal courts," but McCoy stated she did not "care what court it was for!" (*Id.*).

The plaintiff put in several requests to speak to Mrs. Shaw, but they were ignored. (*Id.*). He then contacted attorney Wayne Wolf to handle his Workman's Compensation case. (*Id.* at 8). On March 14, 2016, Mr. Wolf visited the plaintiff at the jail, accepted his case, and informed him a law suit would be filed within the week. (*Id.*).

That evening, the plaintiff was given a court order notifying him that Judge Tim Riley had removed him from work release and directed that he be placed in the Marshall County Jail until he could be transported to state prison. (*Id*.). The plaintiff declares he "was in full compliance with Work Release[,]" and "was still gainfully employed and would be getting Workman's Comp pay until he could return to work." (*Id.*). He declares Judge Tim Riley caused him to be refused medical treatment and created a big hardship on his Workman's Comp claim. (*Id.*). On April 10, 2016, the plaintiff filed a motion requesting "to have all of his jail credit applied to his" Marshall County sentence, "but Judge Riley denied the motion without any explanation." (*Id*.).

### III. Analysis

#### A.    Judge Tim Riley

The plaintiff claims Judge Tim Riley held him at the Marshall County Community Corrections Work Release Center (MCCCWRC) in contravention of Judge Steven King's order that he be transferred to the Bureau of Prisons after serving four days in the Blount County Jail. (*Id*. at 9). Moreover, Judge Riley altered the plaintiff's sentencing order without a hearing when he ordered the plaintiff to pay approximately $10,000 in administrative fees in addition to the $32,000 in restitution originally ordered. (*Id.*). Even though the plaintiff "was in full compliance with

Work Release," Judge Riley removed him from the program without a hearing and directed that he be transported to the state penitentiary. (*Id.* at 10). The removal caused harm to the plaintiff's health and interfered with his Workman's Compensation lawsuit. (*Id.*). Finally, the plaintiff alleges Judge Riley summarily denied his motion for jail credit. (*Id.*).

For relief, the plaintiff requests monetary damages. (*Id.* at 11). He also demands to be removed from the custody of the Alabama Department of Corrections and placed in the Blount County Jail to serve his four-day sentence. (*Id.*) (citing CC-15-033). After serving his four-day sentence, the plaintiff demands to be placed in the custody of the U.S. Marshals and transported to the Bureau of Prisons "to serve the remainder of his sentence there." (*Id.*) (citing 5:08-CR-394-RDP-JEO-1). The plaintiff demands "all of" his jail credit be applied to his Marshall County sentence. (*Id.*) (citing CC-15-203).

The facts underlying the plaintiff's claims occurred while Judge Tim Riley was acting in the capacity of a circuit court judge. To the extent the plaintiff requests monetary damages, it is well settled that judges are absolutely immune from liability with respect to actions committed within their jurisdiction as state judges. *Pierson v. Ray*, 386 U.S. 547 (1967). This immunity applies even when judicial acts are done

maliciously or corruptly.  *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986); *Wahl v. McIver*, 773 F.2d 1169, 1172 (11th Cir. 1985).

As for the plaintiff's requests to serve his sentences in a particular order and for jail credit, such requests are challenges to the fact or duration of his confinement. It is well established that such challenges must be made by way of a petition for writ of *habeas corpus* and, in the context of his state court sentences, only after first exhausting adequate state remedies.  Therefore, the relief requested is not appropriate in this 42 U.S.C. § 1983 action.  *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Watson v. Briscoe*, 554 F.2d 650 (5th Cir. 1977).[1]  A prisoner cannot avoid the exhaustion requirements for *habeas* actions by asserting his claims under § 1983.  *Richardson v. Fleming*, 651 F.2d 366 (5th Cir. 1981).  Additionally, and with regard to the order in which the plaintiff serves his sentences, "the question of jurisdiction and custody over a prisoner is one of comity between governments and not a personal right of the prisoner." *Floyd v. Henderson*, 456 F.2d 1117, 1119 (5th Cir. 1972) (citing *Jones v. Taylor*, 327 F.2d 493 (10th Cir. 1964)).

---

[1] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

For the reasons set out above, the plaintiff's suit against Judge Tim Riley is due to be dismissed as barred by the doctrine of absolute immunity and because he has failed to state a claim upon which relief can be granted.

## B.     Eleventh Amendment Immunity

A law "suit against the State [of Alabama] and its [agencies for monetary damages] is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937)).  No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.*; *see also*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).  Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is not different from a suit against the state itself." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

During the time period applicable to the claims in the plaintiff's complaint, he was a state prisoner at MCCCWRC. (Doc. 1 at 5).  The plaintiff's allegations against Markita Shaw, Ramona Rodgers and Suzie McCoy directly relate to decisions each

defendant made either as MCCCWRC's Director, Assistant Director or Bookkeeper. Therefore, Shaw, Rodgers and McCoy "were acting as agents of the State" and are entitled to Eleventh Amendment immunity.  *See Town of Loxley v. Coleman*, 720 So. 2d 907, 908 (Ala. 1998) (granting sovereign immunity to the City of Loxley and an individual defendant because they "were acting as agents of the State, by reason of their service in transporting [the state prisoner plaintiff] and other inmates as a part of the work-release program).

Accordingly, to the extent the plaintiff sues Markita Shaw, Ramona Rodgers and Suzie McCoy for monetary damages in their official capacities, his claims are barred by the doctrine of sovereign immunity and are due to be dismissed.  The remainder of this report and recommendation addresses the plaintiff's claims for monetary damages against the defendants Shaw, Rodgers and McCoy in their individual capacities.

## C.    First Amendment Freedom of Speech

The plaintiff alleges Mrs. Rodgers, the Assistant Director of Work Release, opened and copied legal mail addressed to him from his attorney outside his presence. (Doc. 1 at 5).  When confronted about the matter, Rodgers replied that "all mail was opened."  (*Id*.).  The plaintiff declares Rodgers' actions gave her "an unfair legal advantage," although he does not explain how.  (*Id.* at 9).  He also sues defendant

Markita Shaw for the same offense, presumably because she is the Director of Work Release.  (*Id.*).

The undersigned interprets the plaintiff's allegations as an attempt to claim defendants Rodgers and Shaw violated his right to freedom of speech.  "The First Amendment, as incorporated by the Fourteenth Amendment, prohibits states from 'abridging the freedom of speech.'  U.S. Const. amend. I.  Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008).  "Further, it is well established that a prison inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'"  *Id.* (quoting *Pell v. Procunier,* 417 U.S. 817, 822 (1974)).

The plaintiff "has a First Amendment free speech right to communicate with his attorneys by mail." *Id.* at 1334.  "[A] 'pattern and practice' of opening attorney mail outside [an] inmate's presence 'interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech.'"  *Id.* (quoting *Jones v. Brown,* 461 F.3d 353, 359 (3rd Cir. 2006)).  Defendant Rodgers not only opened the letter from the plaintiff's attorney outside his presence, she also copied the contents of the letter

and informed the plaintiff that all mail was opened in such a fashion.  The plaintiff has alleged a plausible First Amendment free speech claim against defendant Rodgers and she should be directed to respond.

Although defendant Markita Shaw did not open his mail, the plaintiff holds her responsible for interfering with his attorney communications as well.  "There is no *respondeat superior* liability under § 1983."  *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978); *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994)).  As such, in a § 1983 action, "[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  *Braddy v. Florida Dep't of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

Supervisory personnel may be held accountable for the constitutional violations of their subordinates upon proof that they (1) were directly involved in the wrongdoing; (2) failed to remedy a wrong after learning of it through report or appeal; (3) created or allowed a policy under which the violation occurred; or (4) were grossly negligent in managing the subordinates who caused the wrongdoing. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986).  Defendant Rodgers admitted that all inmate mail was opened in the manner she treated the letter from the

plaintiff's attorney.  Under the facts alleged by the plaintiff, Rodgers' behavior was a matter of work release center policy.  Since defendant Shaw is the Director of MCCCWRC, the plaintiff has presented sufficient allegations to state a plausible First Amendment free speech claim against Shaw on a theory of supervisory liability. Defendant Shaw should be directed to respond.

**D.     Eighth Amendment Deliberate Indifference to Serious Medical Needs**

In late February 2016, the plaintiff inhaled "Peracetic Acid" at the plant where he worked and spent 10 days in the hospital recovering from "chemical pneumonia." (Doc. 1 at 7).  His injuries have caused him "lasting complications."  Upon his release from the hospital, the plaintiff was taken to his employer "to fill out paperwork about the incident" and was told the matter "would be turned over to [his employer's] Workman's Comp. Carrier."  (*Id.*).

The plaintiff had "several doctors' appointments with specialists about his illness, along with several very expensive prescriptions that needed to be filled." (*Id.*).  The plaintiff claims defendant Shaw "interfered with" his "medical treatment and care by refusing to turn" his "prescriptions in to his employer."  (*Id.* at 9).  She also encouraged the plaintiff to use his Blue Cross insurance to fill the prescriptions, even though the plaintiff informed her that his insurance could be cancelled if he did so.  The plaintiff "had to go to the ER several times because of his illness, and also

because he was refused his medications  (*Id.* at 7).  Shaw had the plaintiff removed from Work Release, an action that has "prohibited" him "from getting the medical treatment he needed, and still needs."  (*Id.*).

"Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, 792 F2d 1052, 1058 (11th Cir. 1986)).  The conduct of prison officials must run counter to "evolving standards of decency" or involve the "unnecessary and wanton infliction of pain" to be actionable under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (footnote omitted).  Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment.  *Estelle*, 429 U.S. at 106; *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999).  Likewise, a mere difference of opinion between an inmate and the prison medical staff or between members of the medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. *Harris*, 941 F.2d at 1505.

With the foregoing in mind, the Eighth Amendment standard utilized to determine

[d]eliberate indifference to a detainee's [or prisoner's] serious medical needs requires 1) an objectively serious medical need and 2) a defendant who acted with deliberate indifference to that need. *See Burnette* [*v. Taylor*], 533 F.3d [1325] at 1330 [(11th Cir. 2008)]. A "serious medical need" is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Id.* For liability, the defendant must 1) have subjective knowledge of a risk of serious harm, 2) disregard that risk, and 3) display conduct beyond gross negligence. *Id.*

Deliberate indifference may result not only from failure to provide medical care at all, but also from excessive delay: "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999).

*Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (alterations supplied). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "If prison guards delay or deny access to medical care or intentionally interfere with treatment once prescribed, the Eighth Amendment is violated." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05).

After the plaintiff spent 10 days in the hospital suffering from chemical pneumonia, he was prescribed medication and had several doctors' appointments scheduled. Such facts are sufficient to plausibly satisfy the objective prong, *i.e.*, that he suffered from a serious medical need.

Despite knowledge of his condition and its connection to a Workman's Compensation claim, defendant Shaw refused to fill the plaintiff's prescriptions or turn them into his employer so that they could be filled. Instead, she insisted he jeopardize his Blue Cross coverage in order to obtain the medication. Because of her refusals, the plaintiff's condition deteriorated and he had to be taken to the emergency room several times. These facts are sufficient, for 1915A screening purposes, to show defendant Shaw was subjectively aware of a serious risk of harm to the plaintiff if deprived of his medication and intentional interference with his prescribed treatment. Defendant Shaw should be directed to respond.

The plaintiff also alleges defendant Shaw removed him from work release and this prohibited him "from getting the medical treatment he needed, and still needs." (Doc. 1 at 7). He sets forth no facts to support this conclusory assertion. Further, the plaintiff admits he was transferred from the Marshall County Jail into the custody of the Alabama Department of Corrections. As a state inmate, the Alabama Department of Corrections, not defendant Shaw, was responsible for his medical care.[2] The plaintiff has failed to state a plausible Eighth Amendment medical claim against

---

[2] Although he has not informed the court of an address change, the Alabama Department of Corrections website no longer lists the plaintiff as an inmate. *See* http://www.doc.state.al.us. However, the Federal Bureau of Prisons website shows James Donald Nye, Federal Register Number 24049-001, is an inmate at the United States Penitentiary in Atlanta, Georgia. *See* http://bop.gov/inmateloc.

defendant Shaw based on his removal from work release, and this claim is due to be dismissed.

## E.  Fourteenth Amendment Due Process of Law

The plaintiff blames defendant Markita Shaw for the drug testing and smoking fee charges unfairly taken from his inmate account.  (Doc. 1 at 9).  Even so,

> "no procedural due process violation has occurred if a meaningful postdeprivation remedy for the loss is available." *Lindsey* [*v. Storey*,] 936 F.2d [554] at 561 [(11th Cir. 1991)] (internal quotation marks omitted); *see Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981).  "*Hudson* made clear that as long as *some* adequate postdeprivation remedy is available, no due process violation has occurred." *Lindsey*, 936 F.2d at 561.

*Case v. Eslinger*, 555 F.3d 1317, 1330 -1331 (11th Cir. 2009) (parallel citations omitted).

Stated another way, "an unauthorized, intentional deprivation of property by a state employee does not constitute a violation of the due process requirements of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available." *Hudson,* 468 U.S. at 533.  Additionally, "the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property.  Where a government official is merely

negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon,* 474 U.S. 344, 347-48 (1986) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

The charging of drug testing fees and smoking charges to the plaintiff's prisoner account at MCCCWRC did not result in deprivation of property without due process of law.  Section 41-9-60 of the Code of Alabama provides for the State Board of Adjustment to consider claims against the state or its agents.  Because any potential individual defendant is an employee of the Sheriff's Office or, under the circumstances, considered to be an agent of the State of Alabama, an available post-deprivation remedy exists under the state statute.  If the Board of Adjustment denies a claim, then an action may be brought in an Alabama state court for redress.  *See Carmichael v. State Board of Adjustment*, 232 So. 2d 216 (Ala. 1947).

Even if the remedy provided by the State Board of Adjustment was not available to the plaintiff, the State of Alabama, through Ala. Code § 6-5-260, provides a cause of action for the tort of conversion that reads:  "[t]he owner of personalty is entitled to possession thereof.  Any unlawful deprivation of or interference with such possession is a tort for which action lies."

The post-deprivation remedies available under Alabama law satisfy due process.  Therefore, the plaintiff has not been intentionally deprived of property

without due process of law because he had a legal means whereby he could have been heard on this claim.  Further, the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official allegedly causing unintended injury to life, liberty, or property.  As such, the plaintiff's due process claim against defendant Shaw for drug testing overcharges and smoking fees is due to be dismissed

## F.   Fourteenth Amendment Access to the Courts

The plaintiff claims defendant Markita Shaw interfered with his Workman's Compensation case "by having him removed from Work Release," although he does not explain how.  (Doc. 1 at 7).  The plaintiff also claims defendant Suzie McCoy refused "to fill out his paperwork for his *Forma Pauperis*" and threw the forms in the trash can.  (*Id.*).  He explained the forms were "for the federal courts," but McCoy stated she did not "care what court it was for!"  (*Id.*).  McCoy's actions caused the plaintiff "a great burden . . . mentally and financially."  (*Id.* at 10).

The undersigned interprets the plaintiff's allegations as an attempt to state claims of denial of access to the courts.  The right of "access to the courts" as defined in *Bounds v. Smith*, 430 U.S. 817, 822 (1977), requires only that inmates be provided with some "adequate, effective, and meaningful" way, *id.,* "to attack their sentences, directly or indirectly, and . . . to challenge the conditions of their confinement," *Lewis v. Casey*, 518 U.S 343, 346-348 (1996).  This can be accomplished by one of several

alternatives, such as "adequate law libraries or adequate assistance of persons trained in the law." *Bounds*, 430 U.S. at 828.  It must be emphasized that these are but two of the potential *alternative* ways of guaranteeing a prisoner's right of access to the courts; they are not cumulative of one another. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996); *Bounds*, 430 U.S. at 830.

More importantly, "in order to assert a claim arising from the denial of meaningful access to the courts, an inmate must first establish an actual injury." *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (citing *Lewis*, 518 U.S. at 349–50).  Stated differently, "the right [to meaningful access to the courts] is *ancillary* to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

> Actual injury may be established by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or in a legal assistance program or by an official's action. [*Lewis,* 518 U.S.] at 351; *Bass v. Singletary,* 143 F.3d 1442, 1445 (11th Cir. 1998).  For instance, an inmate could show actual injury with proof that a court dismissed his action for failure to comply with a technical requirement unknown to the inmate due to deficiencies in the prison's assistance facilities, or that a claim could not be presented to a court because an inmate was so stymied by the law library's inadequacies that he could not prepare a complaint. *Lewis,* 518 U.S. at 351.

*Barbour*, 471 F.3d at 1225 (alteration supplied, parallel citations omitted).  A plaintiff must describe his predicate claims well enough to establish that they are "'nonfrivolous'" and "'arguable'" to a degree "more than hope."  *Harbury*, 536 U.S. at 416.

The plaintiff's access to the courts claim against defendant Shaw is due to be dismissed because a Workman's Compensation case is not the type of legal claim envisioned by *Bounds* and its progeny.  *See Lewis*, 518 U.S. at 355 ("Impairment of any . . . litigating capacity [other than direct and collateral review or conditions of confinements claims] is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").  Additionally, the plaintiff has legal counsel representing him in the Workman's Compensation case.

The plaintiff's access to the courts claim against defendant McCoy also fails. He alleges McCoy refused to help him complete the *in forma pauperis* application needed to initiate a federal lawsuit and threw the application in the trash can. McCoy's actions purportedly caused him mental and financial hardship, but these facts are not material to the issue of whether he was actually injured.  First, the plaintiff does not reveal the nature of the federal lawsuit he was attempting to file. Second, and even if the court assumes the plaintiff's case was either a direct or collateral appeal from a criminal conviction or a challenge to his conditions of

confinement, the plaintiff has not described any of the claims he intended to present.[3]

Therefore, the plaintiff has not identified "a colorable underlying claim for which he

seeks relief," *i.e.*, "a 'nonfrivolous,' 'arguable' underlying claim." *Barbour*, 471 F.3d

1222 (quoting *Harbury*, 536 U.S. at 414-15) (additional internal citation omitted).

Since the plaintiff has not alleged facts to plausibly satisfy the actual injury

requirement, he has failed to state an access to the courts claim upon which relief can

be granted against defendants Shaw and McCoy.   These claims are due to be

dismissed.

## IV. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** all claims in

this action, except the First Amendment Free Speech claims against defendants Shaw

and Rodgers, and the Eighth Amendment medical care claims against defendant Shaw

for her refusal to fill the plaintiff's prescriptions be **DISMISSED WITHOUT**

**PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon

which relief can be granted.   The undersigned **FURTHER RECOMMENDS** the

remaining claims be **REFERRED** to the undersigned for further proceedings.

---

[3] If the federal lawsuit the plaintiff intended to file is the current case, the plaintiff clearly has not been deprived of access to the courts.

## V. Notice of Right to Object

The plaintiff may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.  Failure to object to factual findings will bar later review of those findings, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

## VI.  Plaintiff's Address

At the time the complaint was filed, the plaintiff was a state inmate in the custody of the Alabama Department of Corrections, but he listed his address as "c/o Tracie Hodges, P.O. Box 494, Decatur, Alabama 35602."  (Doc. 1 at 4).  The undersigned has learned the plaintiff now is a federal inmate and therefore no longer in the custody of the Alabama Department of Corrections.  *See supra* n.2.  The plaintiff's federal register number is 24049-001, and he is housed at USP Atlanta, 601 McDonough Blvd S.E., Atlanta, Georgia 30315.  The plaintiff is **INSTRUCTED** that he must keep the court apprised of his current physical address.

The Clerk is **DIRECTED** to mail a copy of this report and recommendation to the plaintiff at the address listed in the complaint and USP Atlanta.

**DATED** this 29th day of March, 2017.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE